Number 171191, Martina Rivera-Rivera v. Medina & Medina, Inc. Good morning, your honors. For the plaintiff appellant, Martina Rivera, Anibal Escania Rivera. Your honor, in this case the district court granted summary judgment in favor of the defendant dismissing all of plaintiff's claims. First of all, this appeal, we raise an issue with regards to the difference in salary between Rivera and the other. Before you get into your argument, I want to just check on one thing. The pay stubs that you first asserted were not included. The W-2 forms. And you've corrected the appendix. You didn't correct your brief, so you're still asserting that they weren't included. So where do we stand on that? In terms with regards to the W-2 forms, Ms. Rivera stated that these three managers, Beau, Santiago, and Bravo, worked along with her from 2007 until 2012, and earned a higher salary than her on a W-2 form. The W-2 forms that were included with regards to these three individuals were only, in the case of Beau, for 2007 only. It's missing 2008, 9, 10, 11, and 12. For Mr. Bravo, the only W-2 form included was 2009. It is missing 2007, 8, 2009, 11, and 12. And for Mr. Santiago, the only W-2 form included was the 2012 W-2 form. Ms. Rivera, on the contrary, stated in his opposition that these three individuals worked along with her from 2007 until 2012, and that they earned a higher salary than her on a weekly basis. The defendants tried to contradict Ms. Rivera with these three W-2 forms, and a list prepared by the defendant for the purposes of the motion for summary judgment related that these individuals worked for only a certain period of time, and not from 2007 until 2012. So what we have in here is the testimony of Ms. Rivera, that they occupied the same position as her of key account manager, and worked along with her from 2007 until 2012. And the position of the defendant, Ms. Cortez, a list prepared for several years, prepared only for the purpose of supporting the motion for summary judgment, and three W-2 forms. With this evidence, there is no job descriptions, there is no title positions, there is nothing. Only the testimony of Ms. Rivera versus the sworn statement of Ms. Cortez stating that they occupied different positions. With this evidence, and three W-2 forms, the honorable court concluded that from 2007 until 2012, Ms. Rivera earned a higher salary than her, although from plaintiff deposition and the evidence submitted, that conclusion cannot be reached with the W-2 forms because only three were included for these three individuals. After reviewing defendant brief, defendant brief is correct in the terms that the plaintiff, although in this brief stated that those actions from the defendant violated Title VII and the Equal Pay Act, defendant is correct in terms that the plaintiff never raised an Equal Pay Act in the complaint. So we are hereby withdrawing the Equal Pay Act claim because the truth of the matter is that it was never raised in the complaint. Nevertheless, those actions with regards to the difference in salary between the three male managers and Ms. Rivera is a violation on the Title VII, gender violation on the Title VII, and it was elected in the complaint, and addressing the opposition for summary judgment. The other issue was with regards to the failure for the actions from the court of dismissing plaintiff's hostile working environment and discrimination claims under Title VII and AREA, and the conclusion that the plaintiff was not subject to a hostile working environment because allegedly the plaintiff did not state with certainty the different comments made, the dates that the comments were made, the frequency, the name of the persons that made the different comments, and the plaintiff in her opposition specifically stated the dates that the comments were made, the discriminatory comments were made, the time frame of the discriminatory and retaliatory comments were made after the filing of the discrimination charge also, the name of the persons that made the different discriminatory and retaliatory comments that described the different retaliatory comments made and to whom the same were addressed. So in terms of specificity, dates, and the nature of the comments and the context of the comments, the plaintiff in the hostile working environment claim, the plaintiff also not only described the comments made and the fact that the same work continues, but also submitted evidence with regards to the psychiatric records with Dr. Dorta, and also with hospitalization from San Juan Capistrano, which specifically stated that the plaintiff's mental and emotional condition, which was diagnosed as a major depressive disorder, was caused by the hostile working environment, by the working environment and her interaction with her supervisors, which were Mr. Medina. And it was also submitted as part of the evidence in the opposition that the plaintiff's psychiatrist recommended the plaintiff that she should just resign and leave. So I read in your brief about the effect that she alleges this had on her and the general statement that any worker would react similarly, but what I didn't see in the brief was any analysis about the comments themselves and what was going on. What do I do with that? The comments themselves, although the comments themselves, the comments were related directly to Ms. Rivera's age and also directly related to the discrimination charge file. Those comments were directly related that she was old, that due to the discrimination charge she would be fired, that due to the that not relate directly to her age or to the discrimination charge. These comments were directly related to her, directly related to her age, directly related to her discrimination charge, and directly related to what was going to occur to her because of the filing of the discrimination charge. These comments also reflect the discrimination charge, and also the discriminatory comments were made by the top decision-makers in the company. So I believe that the comments made by these officers in the timeframe that were made and the close temporal proximity also after the discrimination charge was filed, and also the effects of the Milena Rivera which was evidenced by the record from San Juan Capistrano and the psychiatrists definitely force us to conclude that Ms. Rivera was indeed subject to a hostile working environment. Counsel, excuse me, let me refer your attention, this is what the trial judge says about the nature of Ms. Clarence's allegations, and I'm quoting, Rivera's allegation that three of Milena's officers almost on a daily basis made derogatory comments against her without providing context, specific dates, the precise words used, or naming the specific person involved in each instance is too vague to satisfy the summary judgment standard. I thought I heard you say that in some form Ms. Clarence has provided the context, the specific dates, the precise words used, the specific person involved, are you saying that the district court's characterization of the summary judgment record is something inaccurate, something wrong? Yes sir, it is my position that the plaintiff did comply with those requirements stated by the Honorable Judge Casillas that she did not comply with, she did provide the dates, the context. So are you implying that he refers to the fact that even though your client was deposed, in responding to the motion for summary judgment, you do not rely on what you said in the deposition, instead you prepare I guess some kind of an affidavit, and are you saying that it is in that affidavit, in response to the motion for summary judgment, that all of this detail that he says is missing is in fact provided, is that where you would find all this detail? The plaintiff then submitted a motion in compliance with court order, and after reviewing the motion in compliance with court order and defendant's response to the same, the affidavit prepared by the plaintiff was not stricken, and it was not found that the affidavit was a sham affidavit. Contrary to plaintiff deposition records, in plaintiff deposition records, none of the issues that were raised in the affidavit were raised by defendant's counsel during plaintiff deposition, even though defendant's counsel during the deposition, it was stated in the motion in compliance with court order, asked the plaintiff for discriminatory comments. However, discriminatory comments made to the plaintiff in writing specifically, and that issue was specifically addressed by the undersigned in the motion, that defendant's counsel knew that discriminatory comments were made against the plaintiff since it was raised since the discrimination charge and in the complaint. However, during the deposition, decided only to ask whether the discriminatory comments were made in writing instead of whether the same were made verbally to her, and when the, as it is stated in the response, and when the plaintiff tried to explain, it was simply a question of whether the same were made in writing. So the plaintiff had no other alternative at the time that the motion for summary judgment was filed to prepare that affidavit in order to oppose the same. However, It had been brought out by her counsel at the deposition, right? I'm sorry, your honor. You were her counsel at the deposition? Wouldn't you have had the motivation to bring those facts out at that time? The thing, your honor, is that since I don't know how the question was whether the discriminatory comments were made in writing, I do not know at the time that the deposition is taken whether this is going to be an issue that is going to be raised in the motion for summary judgment or any type of other dispositive motions since I'm not the one filing. So if the question is whether the discriminatory comments were made in writing or not, plaintiff fully answered the question and defendants. Thank you. Are there other questions, judges? I'm fine. Thank you. Okay. Good morning to all the members of the panel. May it please the court. My name is Julio Lugo Munoz. I represent Medina, Medina. Your honor, concerning the sham affidavit that you brought, in fact, the judge did not enter into deciding if the affidavit was or not sham affidavit because he understood that this form statement by itself does not comply with the elements required to survive a summary judgment. However, in a footnote of. Wait a minute. What does that mean? Are you saying that he didn't consider it or he considered it and didn't think it's efficient to survive summary judgment? Well, initially he considered it and he requested some memoranda from the parties. We submitted, but in his decision, he understood that he was not going to enter into that controversy because the sworn statement by itself was not enough to comply with the to survive summary judgment and very important, your honor, and I think you made the proper question in a case that in which you participate. It is the case of Carlos Escribano versus professional with the same attorney of the plaintiff. That issue was brought and he blamed the opposing counsel, counsel, excuse me, for not making the question that he should have been posing in this case. The counsel for the appellant, excuse me, the counsel for the appellee made the proper questions and he was in the deposition. He was representing his client. Wait a minute, hang on a second. You filed a notice to depose the plaintiff, is that correct? Excuse me, your honor? You deposed the plaintiff? We deposed the plaintiff, that's correct. I'm not aware of any rule that says plaintiff's counsel has to ask her questions at your deposition. I am aware of it, your honor, but he cannot blame the counsel that takes the deposition for any question not posted. In that case, if he understood. He doesn't at a deposition have to fill in his case asking questions from you about were there verbal comments? No. It was asked if there was written comments from the owners of the company, but the question was very open and it was analyzed by Judge Casillas. Well, written is very specific. Did you ask if there were verbal comments? I think it could be implied with the question. It was a very open question. Did you ask? Directly no, your honor. To be frank with you, directly no. We did not ask if there were verbal comments. But she testified to the question posted by the counsel of Apellee that there were verbal comments. Then with that reply, we understand that his lawyer had the obligation to bring that in the questioning after the appellant, Apellee, attorney, finished with the deposition. And Casillas, as a matter of fact, in the footnote in the decision, specifically stated that we probably have a reason in our argument. There is a footnote in the opinion. I am going to show it to you. Show it now. Refer to it. It is footnote number three, your honor. And Judge Casillas stated that our argument may have some appeal, but because the sworn statement was not enough, he was not going to enter into that. Let me ask you about the sworn statement. Yes, your honor. I take it that the failing was that there was not sufficient detail. That's correct. But that seems to me to be a pretty high standard and perhaps not fair when we're talking about employees who don't necessarily keep log books and aren't watching the clock to write down all of these things. You know, if it's somebody who's trying to invent a cause of action, maybe so, but regular employees, I don't know why we would require that kind of detail. Your honor, the only thing that the plaintiff did was taking the complaint and sworn it. It was too general. She is the one that alleged that the standard is high enough. It's very high. It is not a low standard. He is required to state context because the court should have any information to draw any inferences. The judge, Casillas, stated in his opinion that there was no context. There was nothing to conclude that there was enough pervasive atmosphere in the work, in the air work. So I understand that. The plaintiff indicated that she was subjected to derogatory comments on a near daily basis. So if, in fact, she was subject to derogatory comments on a near daily basis, I'm having trouble trying to figure out why that wouldn't be sufficient. Are you saying that in the pleading state, which still requires a short and plain statement of the claim showing that the pleader is entitled to relief, that in the pleading she's got to spell out the derogatory comments that she was subjected to? No, your honor. In the sworn statement. In the sworn statement, she has had to explain what the derogatory statement was stated to her. And she didn't explain anything. She merely stated that she was under those commentaries on a daily basis. That's it. But what was the comments? What was the remarks? And the foul language. She even stated that she was subject to foul language. But there is no statement where she explained what type of foul language was used against her. So obviously. Are you saying that her statement doesn't contain an allegation that she was old and should be retired before she was fired or too old to perform her job Well, the court understood that those comments were too mild. And the reason to conclude that. The question is, are those contained in our affidavit? Yes. I'm sorry, I didn't hear you. Excuse me, your honor. She didn't hear your answer. I don't understand the question, your honor. Are you saying that those statements that I just rattled off were not in her affidavit? Well, she stated in the affidavit some statements, your honor. Some statements. But as the court decided, they were too mild. First, the court decided that it was not enough. Second, it were in fact stated and in fact she complied with the summary judgment standard. Well, the comments were too mild. And the court, to conclude that, referred to three opinions of the district court. Precisely, specifically three cases handed by the lawyer of the appellant in this case. Those are the case of Villegas and other two cases in which it is concluded that commentaries like those, even in a daily basis, were not enough, are too mild. And these three court decisions are very specific and go right to the point, your honor. Three different judges of this court decided on three different cases brought by the same lawyer of Martina Rivera, bringing the same type of allegations that those were not enough. Your honor, I have to cover the district court. I have to ask you, why are you making the point, it seems a bit ad hominem, you're talking about the lawyer in this case has made similar kinds of claims on behalf of clients in other cases. What are you implying by saying that? Well, I am saying that this is not the first time that that type of sworn statement are presented to try to defeat summary judgment. There is a few cases, more than a few cases, I think there are at least 12 cases before the district court and one case decided by the first district court concerning this type of strategy to defeat summary judgment. And what I am saying, I know that in the summary judgment stage, we are not dealing with credibility, no weight in the evidence. I am quite sure about it. But I bring it because in these other cases, it was brought the same allegation. It was brought the same alleged comments or remarks and the court decided simply that they were not enough. Your Honor, I have to address the disparate treatment in salary in one minute. One minute. It is not correct that these three persons, the three persons that allegedly the W-2 forms were missing, it is not correct that they worked the whole period along with Martina Rivera. They worked on the period that we specify in the list provided as part of the appendix. They worked for a brief period in different stages with the employer. Specifically, as we explained, in the case of Jaime Bowe, she only worked on 2007. In the case of the other two persons, the other one, Frank Bravo, worked only on 2009 and William Santiago worked on 2012. So, the record has indeed the proper documents to substantiate our allegations. These persons earned only $700. They never, never, never earned $800 as the plaintiff stated. As a matter of fact, the only evidence that the plaintiff brought to this court in support of his allegation is hearsay evidence. He merely alleged that he had a conversation with one of his fellow workers somewhere. She never specified when and that they told her, one or two of them told her, that they earned in that position $800 per week. That is not true and that is poor classic hearsay, inadmissible. Okay. Judge Lopez, Judge Thompson, any additional questions? I'm good. Thank you. Thank you. I'm fine. Thank you. Thank you, Your Honor.